RICCI, FAVA, LLC
16 Furler Street
Totowa, New Jersey  07512
Attorney for Plaintiff, Scott V. Spina, Jr.
Attorney ID #  033531996

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SCOTT V. SPINA, JR., | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JOSEPH CARTAGENA, A/K/A "FAT JOE": | | COMPLAINT AND JURY DEMAND |
| ALL THE WAY UP, LLC., A/K/A "KING | : | |
| OF KICKS," UP NYC,LLC., JOHN DOES | : | |
| 1-10 AND XYZ CORPORATION | : | |
| 1-10 (names being fictitious) | : | |
| | : | |
| Defendant. | : | |
| | : | |

Plaintiff, Scott V. Spina, Jr., ("Plaintiff"), residing in the City of Bloomfield, County of

Essex and the State of New Jersey, by way of complaint against Defendants says:

### PRELIMINARY STATEMENT

In February 2016, when Plaintiff was eighteen years old, he was approached by

Defendant Joseph Cartagena a/k/a "Fat Joe," a well known rapper and his managers and pitched

an idea to form a business with Joseph Cartagena.  At the time, Plaintiff operated a successful

venture "Scotty Kicks" which sold sneakers to major celebrities and which generated a lot of

attention in the media and on social media such as Instagram and propelled Plaintiff himself into

a minor celebrity.  At the time the parties entered into partnership, Plaintiff had approximately

sixty thousand Instagram followers.

Plaintiff and Joseph Cartagena agreed to become partners in a high end sneaker and clothing store.  In June 2016, Plaintiff incorporated the business, All the Way Up, LLC, a/k/a King of Kicks.  In furtherance of the partnership, Plaintiff worked tirelessly over the next three months locating the venue, negotiating the lease, paid the lease deposit, completed and signed a Nike contract, managed and oversaw the building of the store, and invested all up from capital, approximately $480,000.00, necessary to get the business up and running.  During this time, Plaintiff was not paid for his services.

All the Way Up, LLC., celebrated its grand opening on November 5, 2016.  On its first day, the store generated approximately $175,000.00 in sales.  On November 25, 2016, twenty (20) days after the store opened, Plaintiff was unlawfully ejected from the store premises and continue to be banned form the premises.  Prior to November 25, 2016, Joseph Cartagena instructed the business's store manager to open another bank account for the business without Plaintiff's knowledge.  Funds generated form sales were then deposited into the new account. On or about November 28, 2016, three (3) days after Plaintiff was unlawfully banned from his business, Joseph Cartagena unlawfully formed a new limited liability company, Up NYC, LLC, and, upon information and belief, has unlawfully diverted all the property of All the Way Up to Up NYC.  As of November 27, 2016, All the Way Up generated approximately $468,467.39 in sales and reflected a profit of approximately $285,662.38.  None of these funds has been disclosed or distributed to Plaintiff.

Despite knowledge of the outstanding debts owed by All the Way Up, Joseph Cartagena has intentionally breached service and loan contracts between Al the Way Up, Plaintiff, and various individuals and services providers, including, but not limited to, ADT, sale taxes owed tot eh City of New York, and the principal, interest and late fees to two lenders who lent capital

to fund the opening of the store. Joseph Cartagena has failed to pay these debts and has failed to repay Plaintiff the monies Plaintiff personally invested into the business despite demands.

This Complaint seeks the dissolution of the company(s), inspection of the company's records and books, receivership and removal of Joseph Cartagena as a member, and payment of all outstanding debts.  Plaintiff further seeks damages for breach of contract, conversion, unjust enrichment, and fraudulent conversion, among other relief.

<u>JURISDICTION AND VENUE</u>

This Court has original jurisdiction over this action pursuant to 28 U.S.C. SS 1332 (2) (1) and SS 1332 (a) (3) since there is complete diversity between Plaintiff who resides in New Jersey, and Defendant who are citizens of New York and Florida, the matter in controversy exceeds $75,000.00, and this Court has personal jurisdiction over Defendants.

<u>PARTIES</u>

1.  Plaintiff Scott V. Spina, Jr., is a citizen of the United States,  He was  and is, at all relevant times hereto, a resident of the State of New Jersey.

2.  Defendant Joseph Cartagena, a/k/a "Fat Joe" (hereinafter "Defendant Cartagena"), is a citizen of the United States.  He was and is, at all relevant times hereto, a resident of the State of Florida.

3.  Defendant All the Way Up, LLC, a/k/a King of Kicks, (hereinafter "All the Way Up"), is a New York Limited liability company duly organized under the laws of the State of New York and, at all relevant times, was and continues to conduct business in the State of New York and throughout the country, including in New Jersey.

4.   Upon information and belief, All the Way Up's principal place of business is located at 3800-3806 Broadway, in the Borough of New York, State of New York 10032, and its registered address for service of process is c/o United States Corporation Agents, 7014 13th Avenue, Suite 202, New York, NY  11228.

5.   Upon information and belief, Defendant Up NYC, LLC (hereinafter "Up NYC"), is a New York limited liability company duly organized under the laws of the State of New York and at all relevant times was and continues to conduct business in the State of New York and throughout the country, including in New Jersey.

6.   Upon  information and belief, Up NYC has its corporate headquarters at 3800-3806 Broadway, in the Borough of New York, State of New York 10032, and its registered address for service of process is Corporation Service Company, 80 State Street, Albany, New York, 12207.

7.   Defendants All the Way Up and Up NYC are in the business of selling clothing and sneakers to consumers.

8.   Plaintiff and Defendant Cartagena are the sole owners of All the Way Up.  Pursuant to the parties' business agreement, Plaintiff owns seventy-five percent of the business, All the Way Up, and Defendant Cartagena owns twenty-five percent.

9.   Plaintiff is listed as the managing member of the Resale Certificate filed with the New York State Department of Taxation and Finance and was listed a guarantor and managing member on the executed contract between All the Way Up and Nike USA, Inc. (hereinafter "Nike").  (See Exhibit A-Application to Register for Sales Tax Certificate of Authority & Exhibit B-Executed Nike Contract.)

10. Upon information and belief, Defendant Cartagena incorporated Up NYC three (3) days after Plaintiff was unlawfully removed form his business in furtherance of a scheme to defraud Plaintiff.

11. Upon information and belief, Defendant "Cartagena" at all relevant times hereinafter, is and was the managing partner, officer, secretary, and sole member of the Board of Directors of Up NYC and is the sole owner of Up NYC.

12. Upon information and belief, Defendants Cartagena and Up NYC have unlawfully divested the assets of All the Way Up and transferred same to Up NYC.

13. Upon information and belief, Defendants John Does 1-10 are person whose identities are currently unknown who may have been used by the Defendants Cartagena and Up NYC to divest, to receive and to hold assets of All the Way Up to the detriment of Plaintiff.  Plaintiff will amend the complaint after discovery to identify specific persons as appropriate and permitted under the Federal Rules of Court.

14. Upon information and belief, Defendants, XYZ Corporations 1-10 are legal entities whose identities are currently unknown but who may have been used by Defendants Cartagena and Up NYC to divest, to receive and to hold assets of All the Way Up to the detriment of Plaintiff.  Plaintiff will amend the complaint after discovery to identify specific persons as appropriate and permitted under the Federal Rules of Court.

15. In December 2015, when Plaintiff was eighteen years old and still in high school, Plaintiff was introduced to Defendant Cartagena through a mutual friend, a prominent music industry figure who often introduced Plaintiff to the newest celebrities including sports players and entertainers.

16. At the time of the meeting, Plaintiff operated a successful and well established business venture, "Scotty Kicks." Plaintiff sold sneakers to celebrities, sport players and entertainers.  Plaintiff established his business primarily through social media outlets such as Facebook and Instagram.

17. The celebrities, sports players and entertainers to whom Plaintiff sold sneakers sometimes gave Plaintiff's business a "shout-out" on their social media pages. As a result, Plaintiff became famous in his own right and amassed thousands of followers on social media.

18. During their first meeting, Plaintiff gave Defendant Cartagena two pairs of sneakers as gift.  In exchange, Defendant Cartagena made a video shout-out on social media for Plaintiff's sneaker business "Scotty kicks."

19. Defendant Cartagena's road manager, Daniel Castro ("Uncle Dan") who is also Defendant's uncle, was present at the initial meeting.  Uncle Dan was impressed with what Plaintiff had accomplished at the tender age of eighteen.  The two exchanges numbers.

20. Due to Plaintiff's popularity and his celebrity status on social media, a few weeks later, Defendant Cartagena, through his manager, "Elis" and Uncle Dan, approached Plaintiff with a business proposal to partner with Defendant Cartagena in a money making venture.  Given both Plaintiff and Defendant Cartagena's love for sneakers, they agreed to open a high-end sneaker store in New York City.

21. Defendant Cartagena's manager Elis represented that Defendant Cartagena would be able to secure Nike and Jordan accounts.

22. Plaintiff advised Cartagena's manager Elis he had no money to invest as he was only eighteen years old and still in high school. Elis advised Plaintiff "not to worry" and stated that Defendant Cartagena would provide the capital to get the business started. He then stated Plaintiff and Defendant Cartagena would be 50/50 partner.

23. Following that meeting, Plaintiff, Defendant Cartagena's manager Elis and Uncle Dan later met with Defendant Cartagena at his hotel to discuss the business venture.

24. Defendant Cartagena agreed to partner with Plaintiff to open the sneaker store and agreed to the terms of the partnership agreement. Defendant Cartagena instructed Plaintiff to begin the process of scouting possible locations in New York.

25. During this time, Plaintiff was assured Defendant Cartagena would provide the capital to fund the entire venture while Plaintiff would be responsible for securing the location, building the store, prepare for opening, managing the store's social medical profile and managing the day to day operations of the store.

26. On or about May, 2016, Defendant Cartagena obtained the Nike contract approval. Defendant Cartagena instructed Plaintiff to negotiate the terms of a lease with the landlord for the retail property located 3806 Broadway, in the Borough of New York. After about a month of negotiations, Plaintiff obtained a lease for retail space at 3800-3806 Broadway a/k/a 553-559 West 158th Street, New York, New York 10032.

27. Upon securing the lease, Plaintiff asked Defendant Cartagena for the funds in order to pay the lease deposit, start the process renovating and building the store, open business bank accounts and hire contractors.

28. Defendant Cartagena told Plaintiff, for the first time, that Plaintiff would have to put up all capital to get the business up and running since he, Cartagena, had secured the

Nike account.  This meeting happened at the Double Tree Hotel in Fort Lee, New Jersey.

29. Plaintiff advised Defendant Cartagena that he did not have the funds but that he may be able to borrow the funds to get the business started.  Defendant Cartagena urged the Plaintiff to borrow the money to fund the venture.  Defendant Cartagena indicated he did not have the money because he was settling IRS debts.

30. Plaintiff and Defendant Cartagena further discussed the terms of their business agreement.  Plaintiff advised Defendant Cartagena that since he, Plaintiff, was only one putting up the capital and doing all the necessary work to get the business up and running, Plaintiff was entitled to more that a fifty (5) percent ownership.  Plaintiff and Cartagena came to an agreement that Plaintiff would receive seventy-five percent ownership interests in the business and Defendant Cartagena twenty-five percent.

31. In June 2016, in furtherance of the partnership created, owned

32. The documents filed with the State of New York, Department of Taxation and Finance, list Plaintiff as the managing owner of All the Way Up, LLC., a/k/a King of Kicks.  As of July 1, 2016, Plaintiff was listed as seventy-five percent owner of the business. (See Exhibit A.)

33. In June and July 2016, Plaintiff secured the funding for the business by way of three (3) secured promissory notes from two lenders, in the amount of $150,000.00; $75,000.00 & $00,000.00, respectively, for a total of $325,000.00 at a rate of 22% and 18% interest respectively.  Plaintiff has defaulted on these loans as a result of Defendant's actions.  Despite demands, Defendants have failed to repay these loans.

34. During the building of the store, Plaintiff, at Defendant Cartagena's request and based on his representations, continued to provide additional capital to finance the ongoing and successful building of a grand opening of the store.  Plaintiff contributed approximately $150,000.00 of his own funds.  Despite demands, Defendants have failed to repay Plaintiff.

35. Plaintiff paid the landlords a security of $81,000.00 and another $18,000.00 which represents the first month's rent.

36. Plaintiff assumed responsibility for managing the day to day operations of All the Way Up, including managing the build out of the store in preparation for the grand opening.  Defendant Cartagena insisted Plaintiff use only the contractors be recommended.

37. Plaintiff paid the store designer Nicole DiPionto recommended by Defendant Cartagena and the various vendors she recommended a total of $174,888.34.  The total cost to prepare the store for its grand opening was approximately $475,000.00.  Plaintiff alone provided the capital.  Defendant Cartagena contributed zero dollars to finance the building out and opening the store.

38. Construction of the store lasted three months.  In an effort to save money, Plaintiff himself began demolition and gutting of the store.  Plaintiff was the store location every day form the date he signed the lease in June 2016 until November 25, 2016, the day he was thrown out of his own business.

39. Plaintiff ran out of money on September 1, 2016.  Plaintiff asked Defendant Cartagena for funds to assist with the completion of the store.  Defendant advised

Plaintiff he was "dealing with tax problems" and the he could only give Plaintiff $50,000.00.

40. Plaintiff needed funds to complete the store.  Based on Defendant Cartagena's representation that he would provide $50,000.00 to Plaintiff, Plaintiff deposited two check from his personal account into All the Way Up checking account.  The Plaintiff's bank paid the $50,000.00 but only had $17,000.00 in the account

41. Defendant Cartagena failed to provide the promised $50,000.00.  As a result, there was an overdraft of approximately $34,000.00 in the business's check ing account. Plaintiff repeatedly told "Uncle Dan" the account was overdrawn and was repeatedly assured Defendant Cartagena would take care of it.  Defendant Cartagena took the $34,000.00 out of the account of All the Way Up and deposited in

42. The build out and design of the store was completed in September 2016.

43. On or about September 15, 2016, without consulting Plaintiff, Defendant Cartagena hired two of his employees, Johnny Colon "JB" and "Frank" to assist with preparing the store for the opening.  JB was paid $1,000.00 per week and Frank was paid $700 per week.  Plaintiff alone financed the payroll of these two individuals.  Johnny Colon was charged and indicted with 2nd degree robbery and 2nd degree aggravated assault of Plaintiff Spina for robbing him on February 18, 2018.

44. Defendant Cartagena belatedly provided $50,000.00 on October 3, 2016, after the store was completed.  These funds were used to purchase products such as clothing and shoes for sale in the store.

45. Although Plaintiff the majority all of the capital to fund the business venture, Plaintiff never drew a salary and spent thousands of dollars on toll and gas commuting back

and forth to the store.  Because he was not getting paid and had invested all of his own money into the business, Plaintiff used the company's debit card to pay some of his personal expenses.

46. The grand opening was November 5, 2016.  Two weeks prior to the grand opening, Defendant Cartagena, hired a manager John Okeefe ('John"), a/k/a "Slow" to help out.  Once again, Defendant failed to consult with Plaintiff.

47. Defendant Cartagena instructed Plaintiff to give John access to all the business's bank accounts, which Plaintiff did.

48. The grand opening of the store on November 5, 2016, generated significant media publicity.  The store sold approximately $175,000.00 in merchandise on the first day.  Plaintiff spent approximately an additional $22,000.00 of his own money to market the grand opening.

49. From that day on, John completely took over the management of the entire operation, freezing Plaintiff out and leaving him to feel as if he was not even an owner of the business.

50. Upon information and belief, on November 25, 2016, merely twenty days after the grand opening, John, at the direction of Defendant Cartagena, surreptitiously opened a separate TD bank account for the business without informing Plaintiff. This was done in order to divert the store's proceeds and profits to that account.  John began funding the new account with monies generated from the business, again without advising Plaintiff.

51. On November 25, 2016, John called Plaintiff and instructed him to close out the newly created business account at Chase bank and bring the funds to him at the store.

Plaintiff inquired why and was told Defendant Cartagena had instructed Plaintiff to do so to pay bills.

52. Defendant Cartagena instructed JB to accompany Plaintiff to the back.  Plaitniff emptied the account and brought the $72,082.00 to the store which he gave to John. After speaking with JB, John advised Plaintiff that he was no longer wanted at the store and instructed Plaintiff to hand over his keys.

53. Plaintiff at first refused.  John then threatened that he and Defendant Cartagena would take the Nike Account and open another store somewhere else.  Plaintiff handed over his keys and left the store.  He was told not to come back.  Fearing for his safety, Plaintiff has not returned to the store since November 25, 2016.

54. Upon information and belief, three (3) days later, on November 28, 2016, Defendants changed the point of sales disconnected all cameras, all of which Plaintiff had set up and paid for, so that Plaintiff was unable to see the maintenance of the business equity, inventories and sales.  Plaintiff was locked out of the Nike account as of November 25, 2016.

55. In furtherance of their intent to defraud Plaintiff of his business, on that same date, November 28, 2016, Defendant Cartagena surreptitiously incorporated a new LLC, Up NYC.

56. Upon information and belief, from November 25, 2016 through present, Defendant Cartagena continues to operate All the Way Up as well as Up NYC.

57. Plaintiff demanded and Defendants failed and refused to provide Plaintiff with any financial accounting and operations information regarding the company's activities, financial condition, and other circumstances.

58. Plaintiff demanded and Defendants failed and refused to provide the requested information, including balance sheets, profit & loss statements and tax records since November 27, 2016.

59. Plaintiff demanded and Defendants failed to pay and continue to fail to pay All the Way Up's outstanding debts, including approximately $28,000.00 in sales taxes owed to the City of New York, as well as debts owed to ADT and Cayan LLC.

60. Plaintiff demanded and Defendants failed to pay and continue to fail to repay the $325,000.00 plus interest and late fees due and owing to the two lenders.

61. Defendants failed to pay and continue to fail to pay the approximately $150,000.00 Plaintiff invested in the business and failed to provide Plaintiff his respective share of All the Way Up and Up NYC's profits.

62. Upon information and belief, Defendant Cartagena transferred all the assets of Al the Way Up to himself, Up NYC and others in breach of his fiduciary duties to the partnership, All the Way Up, corporate entity and to Plaintiff, to steal his interest in All the Way Up, and to deprive Plaintiff of his property permanently.

63. Upon information and belief, Defendants John Does 1-10 and XYZ Corporations 1-10 have appropriated the assets of All the Way Up, including the interest and property of Plaintiff, in breach of their fiduciary duties tot eh partnership, corporate entity and Plaintiff, and, in furtherance of their scheme to defraud Plaintiff, to steal his interest in All the Way Up, and to deprive Plaintiff of his property permanently.

64. Upon information and belief, Defendants John Doe 1-10 and XYZ Corporations 1-10 have received the assets of All the Way Up, including the interests and property of Plaintiff, in breach of their fiduciary duties to the partnership, corporate entity and to

Plaintiff, to steal his interest in All the Way Up, and to deprive Plaintiff of his property permanently.

65. Upon information and belief, Defendants Cartagena, Up NYC, and others have so depleted the assets of All the Way Up by converting those assets, diverting profits and revenues, and transferring assets and funds to themselves, associated friends, family members and legal entities, and, in furtherance of their scheme to defraud Plaintiff, to steal his interest in All the Way Up, and to deprive Plaintiff of his property permanently, that All the Way Up cannot maintain its own inventory and operations.

66. Upon information and belief, Defendants Cartagena, Up NUC, and other have used All the Way Up to obtain inventory on assignment and used the inventory to generate revenue that has not been properly allocated and delivered to All the Way UP and to Plaintiff, in furtherance of their scheme to defraud Plaintiff, to steal his interest in All the Way Up, and to deprive Plaintiff of his property permanently.

67. As a result of Defendants Cartagena, Up NYC, John Does (1-10) and XYZ Corporation (1-10) actions, All the Way Up and Plaintiff's interest therein has been damaged and deprived form Plaintiff permanently.

<u>FIRST COUNT</u>
<u>DISSOLUTION OF LLC</u>

68. Plaintiff repeats and reasserts all allegations and claims identified above as if fully set forth at length herein.

69. Plaintiff and Defendant Cartagena entered into a partnership agreement in or around February 2016 for the purpose of owning and operating a high-end, retail sneaker and

clothing business.  In the absence of a written operation agreement, the terms are governed by the default provisions of N.Y. Ltd. Liab. Co. Law.

70. All the Way Up was created in furtherance of the partnership, operating out of retail space located at 3800-3806 Broadway a/k/a 553-559 West 158th Street, New York 10032, and managed as of November 25, 2016, by Plaintiff.

71. Plaintiff seeks a determination that the LLC, All the Way Up be dissolved because Defendants have engaged in conduct relating to the business that renders it not reasonable practicable to carry on the business of All the Way Up.  In addition, Defendants have engaged in a systematic pattern of unlawful, fraudulent and grossly negligent conduct that has frustrated the purpose of the company and has made it impossible for the business venture to continue.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

a.  Dissolving the LLC, All the Way UP;

b.  Directing Defendant to render to Plaintiff an accounting of all monies received and disbursed by Defendants from November 5, 2016 to present, representing assets of the business and All the Way Up;

c.  Directing Defendants to pay to Plaintiff his respective share of any sum or balance found to be due and owing to All the Way Up and to Plaintiff;

d.  Appointing a receiver of the property including all bank accounts of All the Way Up and the fraudulently formed, LLC, Up NYC, with the power and duty to collect and liquidate all partnership property and assets, apply the property first to the payment of the partnership's debts, including, but not limited to the immediate repayment of the $325,000.00 plus interest and late payments due and owing to

the two lenders, the approximately $28,000.00 in sales taxes owed to the City of

New York, any and all amounts owed to ADT and Cayan LLC, and the immediate

repayment of all capital invested by Plaintiff to get the business up and running,

and thereafter distribute the surplus assets of the partnership to Plaintiff according

to his respective share of seventy-five percent.

e.   Restraining Defendants, pending this action, from receiving any money or

property in the name of or on behalf of All the Way Up and any money or

property in the of the fraudulently formed Up NYC.

f.   Ordering Defendant Cartagena to forfeit his interest in All the Way Up and

fraudulently formed Up NYC as a consequence of his conduct.

g.   Restraining Defendants from disparaging Plaintiff publicly or privately; and

h.   Granting such other and further relief as the Court deems proper.

SECOND COUNT<br>INSPECTION OF RECORDS and BOOKS

72. Plaintiff repeats and reasserts all allegations and claims identified above as if fully set

forth at length herein.

73. Defendant Cartagena at all relevant times was and is an officer/member/shareholder/

partner of All the Way Up and Up NYC and has certain responsibilities and duties

under the company agreements and pursuant to eh N.Y. Lts. Lib. Co. Law.

74. Plaintiff was and is a member/shareholder/partner of All the Way Up and Up NYC

and is a resident of the State of New Jersey.

75. Defendant Cartagena, as managing member/partner/officer of All the Way Up and Up

NYC, was an d is presently obligated by the company agreements as well as by the

N.Y. Ltd. Liab. Co. Law to maintain proper and complete books of account for All

the Way Up and Up NYC, and, further, Defendant Cartagena is obligated to make these books available for inspection by any Officer/shareholder/partner or their representatives at any time during reasonable business hours.

76. Defendant Cartagena, as the managing member/partner/officer, is obligated by the company agreements as well as by the N.Y. Ltd. Liab. Co. Law to permit, at any time and from time to time, each officer/shareholder/partner or his agent to fully examine and audit the company's books, records, accounts, and assets, including bank balances, and, further, Defendant Cartagena is obligated to permit any officer/shareholder/partner to employ any certified public accountant to examine or audit those books and records of All the Way Up and Up NYC.

77. Defendant Cartagena, John Does 1-10 and XYZ Corporations 1-10 failed and refused to make the books, records and accounts of All the Way Up and Up NYC available for inspection and accounts o All the Way Up and Up NYC available for inspection by Plaintiff or by Plaintiff's representatives.  Defendants' failure and refusals are in response Plaintiff's requests for copies or records and request by Plaintiff's representatives to inspect the All the Way UP and Up NYC records.

78. Defendants Cartagena, John Doe 1-10 and XYZ Corporations 1-10's refusal to produce the books, records and accounts of All the Way UP and Up NYC is actionable breach of the company agreements, and, further, is a breach of the fiduciary obligations that Defendant Cartagena, as managing officer, owes to Plaintiff, who is an officer/shareholder/partner of All the Way Up and Up NYC.

79. Plaintiff has sustained and continues to sustain irreparable harm from Defendants Cartagena, John Does 1-10 and XYZ Corporations 1-10's failure and refusal to

permit inspection of All the Way Up and Up NYC's books, records, accounts, and assets and bank statements.

WHEREFORE, Plaintiff demands judgment against Defendant for the following relief:

a.  An order enjoining Defendants from withholding from Plaintiff the right to inspect the books, records, accounts, assets and bank balances of All the Way Up and Up NYC, pursuant to N.Y. Ltd. Liab. Co. Law.

b.  An order directing that Defendants permit Plaintiff, or his representatives or accountants, to examine, copy and inspect the books, records, accounts, assets and bank balances of All the Way Up and Up NYC within ten (10) days; and

c.  An award of costs and such other and further relief as the court deems proper.

THIRD COUNT
REMOVAL OF DEFENDANT JOSEPH CARTAGENA AS MEMBER

80. Plaintiff repeats and reasserts all allegations and claims identified above if fully set forth at length herein.

81. Defendant Cartagena has failed to act in good faith to make distributions to Plaintiff as member/shareholder/partner as required by the company agreements and the N.Y. Ltd. Liab. Co. Law, and, further, has failed and refused to provide an accounting to Plaintiff and/or his representatives.

82. Defendant Cartagena has intentionally mismanaged All the Way Up's and Up NYC's business affairs, largely obtaining for his personal benefit corporate property and monies, and for exposing the corporation to potential civil and criminal liability, Defendant Cartagena breached his fiduciary obligation to his fellow member/shareholder/partner and All the Way Up.

WHEREFORE, Plaintiff demands judgment against Defendant Cartagena for the following relief:

a.   An order mandating that Defendant Cartagena permit Plaintiff, or his representatives or accountants, to examine, copy and inspect the books, records, accounts, assets and bank balances of All the Way Up and Up NYC within ten (10) days;

b.   An order for an accounting of the receipts, costs and profits of All the Way Up and Up NYC, and of the distributions owed to the Plaintiff as member/shareholder/partner;

c.   An order removing Defendant Cartagena from the position of managing member/partner/officer and appointing a custodial receiver for All the Way Up and Up NYC;

d.   An award of the actual and consequential damages caused by Defendant Cartagena;

e.   Exemplary damages; and

f.   An aware of costs and such other and further relief as the court deems proper.

FOURTH COUNT
BREACH OF CONTRACT

83. Plaintiff repeats and reasserts all allegations and claims identified above as if fully set forth at length herein.

84. In connection with the terms of the subject partnership agreement, the members/shareholders/partners agreed to receive shares of the gross profits in accordance with their respective capital contributions in exchange for their valuable contributions in exchange for their valuable contributions and services and in their

capacity as members/shareholders/partners agreed to receive shares of the gross profits in accordance with their respective capital contributions in exchange for their respective capital contributions in exchange for their valuable contributions and services and in their capacity as member/shareholder/partners.

85. In reliance on that agreement, Plaintiff continued to contribute capital to the venture as Defendant Cartagena represented that it was needed as he, Cartagena, did not have the capital to invest.

86. Defendant Cartagena, along with Defendants John Does 1-10 and XYZ Corporations 1-10, have breached the contract by unlawfully cutting Plaintiff off from the business; failing to pay Plaintiff's share of profits; divesting and transferring the partnership's assets to a fraudulently formed LLC. Up NYC and naming himself as the sole owner of the fraudulently formed LLC., without Plaintiff's knowledge or consent, and by failing to use the capital contributions in furtherance of the partnership business, including the payment of All the Way Up debts.

87. Despite various requests, Defendants have intentionally refused to compensate Plaintiff.

88. As a direct and proximate result of Defendants' breach as aforesaid, Plaintiff has incurred damages in an amount to be determined.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for

    a.   Compensatory damages;

    b.   Incidental damages;

    c.   Consequential damages;

    d.   Attorney's fees and costs;

    e.   Pre and Post Judgment interest; and

    f.   Any other relief the court deems appropriate pursuant to N.Y. Lts. Lib. Co. Law.

FIFTH COUNT
OPPRESSIVE CONDUCT

89. Plaintiff repeats and reasserts all allegations and claims identified above as if fully set forth at length herein.

90. Defendant Cartagena actions, along with the actions of Defendants John Doe 1-10 and XYZ Corporations 1-10's in mismanaging the business affairs of All the Way Up and UP NYC, shutting Plaintiff out of the business and abusing his authority in that capacity constitute oppressive and unfair conduct toward Plaintiff, as a member/shareholder/partner of All the Way Up and Up NYC.

91. In mismanaging the All the Way Up and Up NYC corporate business affairs, largely obtaining for his person benefit corporate property and monies, and for exposing the corporation to potential civil and criminal liability, Defendant Cartagena has breached his fiduciary obligation to Plaintiff, his fellow member/shareholder/partner.

WHEREFORE, Plaintiff, as a member/shareholder/partner of All the Way Up and Up NYC, brings a derivative claim on behalf of the corporations and as an individual for his own behalf and, thereby, seeks the following:

    a.   Appointing a receiver of All the Way UP and Up NYC as custodian for the limited purpose of managing all assets at no costs to All the Way Up and Up NYC, pursuant to N.Y. Ltd. Liab. Co. Law during the pendency of this proceeding;

    b.   Directing Defendants to provide an accounting of all transfers or sales of property

belonging to All the Way Up and Up NYC and identifying the transferee on purchases of such

property;                                                                                    ,

   c.  Imposing a constructive trust in favor of All the Way Up and Up NYC on all assets of

Defendants;

   d.  Restraining Defendants form going to or being at the physical location or offices of All

the Way Up and Up NYC during the pendency of this proceeding;

   e.  Compensatory damages;

   f.  Attorneys' fees and costs; and

   g.  Any other relief the court deems appropriate pursuant to N.Y. Ltd. Liab. Co. Law.

SIXTH COUNT
BREACH OF FIDUCIARY OBLIGATION

92. Plaintiff repeats and reasserts all allegations and claims identified above as if fully set forth at length herein.

93. In mismanaging All the Way Up and Up NYC's business affairs, largely obtaining for his personal benefit corporate property and monies, and for his personal benefit corporate property and monies, and for exposing the corporation to potential civil and criminal liability, Defendant Cartagena has breached his fiduciary obligation to his fellow shareholder/partner.

WHEREFORE, Plaintiff, as member/shareholder/partner of All the Way Up and Up

NYC brings a derivative claim on behalf of the corporations and as an individual for his own

behalf and, thereby, seeks the following;

a.  Appointing a receiver of All the Way Up and Up NYC as custodian for the limited purpose of managing all assets at no cost to All the Way Up and Up NYC pursuant to N.Y. Ltd. Liab. Co. Law during the pendency of this proceeding;

b.  Directing Defendants to provide an accounting of all transfers of sales of property belonging to All the Way Up and Up NYC, and identifying the transferee on purchases of such property;

c.  Imposing a constructive trust in favor of All the Way Up and Up NYC, and identifying on all assets of the Defendants;

d.  Restraining Defendants from going to or being at the offices of All the Way Up and Up NYC during the pendency of this proceeding;

e.  Compensatory damages;

f.  Attorneys' fees and costs; and

g.  All other relief the court deems appropriate pursuant to N.Y. Ltd. Liab. Co. Law.

<u>SEVENTH COUNT</u>
<u>CONVERSION</u>

94. Plaintiff repeats and reasserts all allegations and claims identified above as if fully set forth at length herein.

95. At all relevant times, Defendants knew or should have known that the debt to Plaintiff would not be satisfied and that  none of the other Defendants had any intention to pay Plaintiff despite his ownership interest in the partnership, All the Way UP and Up NYC.

96. Defendants acted to deprive Plaintiff of his property permanently by refusing to respond to Plaintiff's demand for an accounting and by appropriating to themselves the assets of All the Way Up and UpNYC.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for:

     a. Compensatory damages;

     b. Incidental damages;

     c. Consequential damages;

     d. Attorneys' fees and costs;

     e. Pre and Post Judgment interest; and

     f. Any other relief the court deems appropriate pursuant to N.Y. Ltd. Co. Law.

EITH COUNT
UNJUST ENRICHMENT

97. Plaintiff repeats and reasserts all allegations and claims identified above as if fully set forth at length herein.

98. By reason of the foregoing, Defendants have been unjustly enriched, and Plaintiff is entitled to restitution.

WHEREFORE, Plaintiff demands judgment against Defendants, joint and severally, for:

a. Appointing a receiver of All the Way Up and Up NYC as custodian for the limited purpose of managing all assets at no cost to All the Way Up and Up NYC pursuant to N.Y. Ltd. Liab. Co. Law during the pendency of this proceeding;

b. Directing Defendants to provide an accounting of all transfers or sales of property belonging to All the Way Up and Up NYC, and identifying the transferee on purchases of such property;

c. Imposing a constructive trust in favor of N.Y. Ltd. Liab. Co. Law on all assets of Defendants;

d. Restraining Defendants from going to or being at the physical location or offices of All the Way Up and Up NYC during the pendency of this proceeding;

e. Compensatory damages;

f. Incidental damages;

g. Consequential damages;

h. Attorneys' fees and costs;

i. Pre and Post Judgment interest; and

j. Any other relief the court deems appropriate pursuant to N.Y. Ltd. Liab. Co. Law.

NINTH COUNT
FRADULENT CONVEYANCE

99. Plaintiff repeats and reasserts all allegations and claims identified above as if fully set forth at length herein.

100. Defendants knowingly and intentionally diverted property in order to avoid payment to Plaintiff for his equitable and legal share in the interests of All the Way Up and Up NYC.

101. As a result, Plaintiff has suffered substantial damages.

WHEREFORE, Plaintiff demands judgments against Defendants, jointly and severally, for:

a. Compensatory damages;

b. Incidental damages;

c. Consequential damages;

d. Attorneys' fees and costs;

e.   Pre and Post Judgment interest; and

f.   Any other relief the court deems appropriate pursuant to N.Y. Ltd. Liab. Co. Law.

<u>JURY DEMAND</u>

Plaintiff demands a trial by jury as to all issues so triable.

Law Offices of Ricci & Fava, LLC.
Attorney for Plaintiff
Scott V. Spina, Jr.

Dated: 8/27/18

By: _____
Ronald J. Ricci, Esq.